## PEYTONA LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3224.

Circuit Court of Appeals, Fourth Circuit.

Jan. 14, 1932.

F. M. Livezey and John T. Delaney, both of Huntington, W. Va. (Livezey, Hogsett & McNeer, of Huntington, W. Va., on the brief), for petitioner.

John H. McEvers, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Stanley Suydam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge.

This is a petition by the Peytona Lumber Company to review a decision of the Board of Tax Appeals, which denied to petitioner the status of affiliation with the Elk Creek Lumber Company for the period from January 1 to November 12, 1920, and also denied petitioner's claim to a special assessment for the year 1920. Petitioner is a lumber manufacturing corporation. The majority of its stock in 1920 was owned by one E. K. Mahan and a group of stockholders referred to in the record as the Mahan group. In 1919 the Elk Creek Lumber Company was organized by Mahan and D. E. and A. M. Hewitt. 50 per cent. of its stock was acquired by Mahan for the benefit of petitioner, and 50 per cent. was acquired by the Hewitts. Prior to its organization, the Hewitt and Mahan groups agreed that management of its operations should be left to the Mahan group, which comprised the same persons who managed petitioner. In addition to this, the Hewitts gave assurances to Mahan that he and his associates might at any time acquire the Hewitt stock at cost, plus interest thereon for the period that the stock should have been held by the Hewitts.

Upon the organization of the Elk Creek Lumber Company, three of its five directors were elected from the Mahan group; these persons being members also of petitioner's directorate of five. They controlled the management of both corporations, which were operated by them in conjunction with each other. On November 13, 1920, the Mahan group acquired the stock of the Hewitts, and same was held thereafter for the benefit of the stockholders of petitioner. The Commissioner of Revenue allowed affiliation for the period from November 13, 1920, through the remainder of the year, but denied it for the period prior to that date; and this action was approved by the Board of Tax Appeals. The action of the Board in this respect is the principal matter challenged by the petitioner for review.

Petitioner took the alternative position before the Commissioner and before the Board that it was entitled to a special assessment for the year 1920 under sections 327 and 328 of the Revenue Act of 1918

(40 Stat. 1093); and in support of this position asked that it be allowed to inspect and to introduce in evidence the tax returns of certain other lumber companies. This request was denied, and the returns were excluded. Special assessment was denied on the ground that the petitioner had failed to establish an abnormality affecting its capital or income for the taxing period in question. The petition for review, in addition to presenting the question as to affiliation, complains of the action of the Board in refusing to allow petitioner to inspect the tax returns of the other lumber companies or to introduce same in evidence as bearing upon petitioner's right to a special assessment.

■ Petitioner bases its claim to affiliation on section 240 (b) (2) of the Revenue Act of 1918 (40 Stat. 1057, 1081), which provides that two corporations shall be deemed to be affiliated, "if substantially all the stock" of the two "is owned or controlled by the same interests." Petitioner concedes that the case presented is not one of ownership of substantially all of the stock of the two corporations by the same interests, but contends that there was present the common control which the statute contemplated. It bases this contention upon the preorganization agreement to the effect that management of the Elk Creek Lumber Company's affairs was to be left to the Mahan group, upon the understanding that the Mahan group might at any time acquire the Hewitt stock in that corporation upon an agreed basis of compensation, and upon the fact that the actual control of that corporation was exercised by the same persons who controlled the affairs of petitioner. Since the case was argued before us, however, the decision of the Supreme Court in the case of Handy & Harman v. Burnet, 52 S. Ct. 51, 52, 76 L. Ed. ——, has settled against petitioner practically all of the questions raised on the question of affiliation. In that case, the Supreme Court holds that the section of the statute relied upon by petitioner "requires control of substantially all of the stock," that "control of the corporations is not enough," and that "the carrying on of a business unit by two or more corporations does not of itself constitute affiliation." After stating that actual, as distinguished from legally enforceable, control was not what was contemplated by the statute, the court said: "The purpose of section 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise even though it was conducted by means of more than one corporation. Subsection (b) clearly reflects the intention, by means of such returns, to secure substantial equality as between shareholders who ultimately bear the burden. That intention is shown by the legislative history and was given effect by the regulations contemporaneously promulgated. It requires no discussion to show that such returns will not make against inequality or evasion unless the same interests are the beneficial owners in like proportions of substantially all of the stock of each of such corporations. Alameda Investment Co. v. McLaughlin (D. C.) 28 F.(2d) 81; Montana Mercantile Co. v. Rasmusson (D. C.) 28 F.(2d) 916; Commissioner v. Adolph Hirsch & Co. (C. C. A.) 30 F.(2d) 645, 646; Commissioner of Internal Revenue v. City Button Works (C. C. A.) 49 F.(2d) 705. Affiliation on any other basis would not make against inequality or evasion. It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute."

■ In the case at bar the evidence falls far short of meeting the criterion laid down by this decision. Viewing the case in the light most favorable to petitioner, there was present nothing more than an agreement that those who controlled the petitioner should control the operations of the Elk Creek Lumber Company and should have the right to purchase the 50 per cent. of its stock owned by the Hewitts. Until this option was exercised, they had no control of the Hewitt stock enforceable at law or otherwise. Their agreement gave them the right to control the operation of the corporation, not the right to control its stock which they did not own. Until the right to purchase was exercised, it could not be said, to use the language of Mr. Justice Butler in the case cited, that "the same interests" were "the beneficial owners in like proportions of substantially all of the stock of each of such corporations."

■ And we think that the Board properly refused to allow petitioner to inspect the tax returns of other lumber companies and properly excluded these returns when offered as evidence. There was no reason to compare the tax of petitioner with the tax as

sessed against other corporations, until it was first shown that there were abnormal conditions affecting the capital or income of petitioner during the period in question. The Board states that the abnormal conditions relied upon by petitioner were (1) the asserted "overrealization" of income due to the sale of an unusually large proportion of high-priced lumber with the consequent accumulation of poorer grades which were included in its closing inventory at the average cost of all grades; and (2) as a resultant of the first, abnormally high profits for the year in question as compared with its profits in other taxable years. The Board held that the contention had not been sustained because petitioner, while contending that its records would support its position, did not offer the records in support thereof, but relied upon the testimony of witnesses as to conclusions. The action of the Commissioner or the Board, in passing upon the right of a taxpayer to a special assessment, is not subject to review by the courts, unless based upon no evidence, or contrary to law, or so manifestly arbitrary and unreasonable as to amount to an abuse of discretion. Williamsport Wire Rope Co. v. U. S., 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985; Ennis Coal Co. v. U. S. (C. C. A. 4th) 37 F.(2d) 574. Certainly under this rule we would not be justified in disturbing the finding that no abnormal condition was shown affecting the capital or income of the corporation; and, in the absence of this, petitioner was not entitled to have comparison made between its income and that of other corporations.

The decision of the Board of Tax Appeals will be affirmed.

Affirmed.